**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| GLORIA L. RITZ, | CASE NO. 1:15-cv-00388-CCC-GBC |
| Plaintiff, | (CHIEF JUDGE CONNER) |
| | (MAGISTRATE JUDGE COHN) |
| v. | |
| CAROLYN W. COLVIN, COMMISSIONER OF SOCIAL SECURITY, | REPORT AND RECOMMENDATION TO DENY PLAINTIFF'S APPEAL |
| | Docs. 1, 9, 10, 15, 17, 18 |
| Defendant. | |

## REPORT AND RECOMMENDATION

### I.    Introduction

The above-captioned action is one seeking review of a decision of the Commissioner of Social Security ("Defendant") denying the application of Gloria L. Ritz ("Plaintiff") for supplemental security income ("SSI") and disability insurance benefits ("DIB") under the Social Security Act, 42 U.S.C. §§401-433, 1382-1383 (the "Act") and Social Security Regulations, 20 C.F.R. §§404.1501 *et seq.*, §§416.901 *et. seq.*[1] (the "Regulations").   The Act places the burden on Plaintiff to demonstrate that she lacks the residual functional capacity ("RFC") to

---

[1] Part 404 governs DIB, Part 416 governs SSI. *See Sims v. Apfel*, 530 U.S. 103, 107 (2000). Like *Sims*, these regulations "are, as relevant here, not materially different" and the Court "will therefore omit references to the latter regulations." *Id.*

perform any work in the national economy.[2] Under the deferential substantial evidence standard of review, the Court must uphold administrative law judge ("ALJ") findings unless no reasonable person would view the relevant evidence as adequate to deny benefits.

Plaintiff alleges onset of disability on October 1, 2010, when she was forty-two years old. She has a high school education. She asserts that she is disabled primarily because of arthritis in her right knee. She also suffers from morbid obesity and other musculoskeletal complaints. The ALJ found that Plaintiff's impairments caused limitations. However, the ALJ found that Plaintiff could perform sedentary work in the national economy. One of the jobs identified by the ALJ was a surveillance system monitor. A vocational expert ("VE") testified that this job would allow Plaintiff to sit or stand whenever she needed. The Dictionary of Occupational Titles ("DOT") provides that this job does not require an individual to reach, handle, finger, balance, stoop, or perform any other postural movements. DOT 379.367-010.  The surveillance system monitor simply watches television screens and telephones for police assistance when necessary. DOT 379.367-010.  Plaintiff has failed to demonstrate that any of her musculoskeletal

---

[2]The burden shifts to the ALJ with regard to vocational evidence, but Plaintiff retains the burden to establish her RFC. *See* 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 416.912(a); *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993).

impairments prevent her from doing a job that allows her to sit or stand at will and does not require other physical functions.

Plaintiff asserts that pain or drowsiness would preclude her from sufficiently concentrating to perform work on a regular and continuing basis. (Pl. Brief). However, the only evidentiary records of an impact on concentration are her subjective claims. No treating physician authored a medical opinion in support of Plaintiff's claims. Doc. 10.   Her treating orthopedist authored an uncontradicted opinion that she could perform light work and stand for up to an hour. An uncontradicted state agency psychologist opined that she had only mild limitation in concentration, persistence, and pace. The ALJ relied on the objective medical evidence, as interpreted by the medical professionals, Plaintiff's inconsistent claims, and other factors, to find her less than fully credible. This is an accurate characterization of the record and a proper reason to discount Plaintiff's credibility. Plaintiff asserts that other factors affecting credibility weigh in her favor, but the Court affords deference to ALJ credibility determinations and may not independently re-weigh the evidence.

Plaintiff makes other claims in this appeal, but they all rely on her subjective complaints. The Court finds no merit to these allegations of error because the ALJ properly found her subjective complaints to be less than fully credible. The Court

recommends that Plaintiff's appeal be denied, the decision of the Commissioner be affirmed, and the case closed.

## II.    Procedural Background

On September 7, 2011, Plaintiff obtained counsel to pursue benefits under the Act. (Tr. 118). On September 12, 2011, Plaintiff applied for SSI and DIB. (Tr. 190-98). On December 23, 2011, the Bureau of Disability Determination ("state agency") denied Plaintiff's application (Tr. 94-117), and Plaintiff requested a hearing. (Tr. 131-33). On June 10, 2013, an ALJ held a hearing at which Plaintiff—who was represented by an attorney—and a vocational expert ("VE") appeared and testified. (Tr. 26-93).  On June 13, 2013, the ALJ found that Plaintiff was not entitled to benefits. (Tr. 10-24). Plaintiff requested review with the Appeals Council (Tr. 6), which the Appeals Council denied on January 6, 2015, affirming the decision of the ALJ as the "final decision" of the Commissioner. (Tr. 1-5). *See Sims v. Apfel*, 530 U.S. 103, 107 (2000).

On February 24, 2015, Plaintiff filed the above-captioned action pursuant to 42 U.S.C. § 405(g) to appeal the decision of the Commissioner. (Doc. 1). On May 7, 2015, the Commissioner filed an answer and administrative transcript of proceedings. (Docs. 9, 10). On July 21, 2015, Plaintiff filed a brief in support of the appeal ("Pl. Brief"). (Doc. 15). On August 24, 2015, Defendant filed a brief in response ("Def. Brief"). (Doc. 17). On September 2, 2015, Plaintiff filed a brief in

reply ("Pl. Reply"). (Doc. 18). On June 29, 2015, the Court referred this case to the undersigned Magistrate Judge. The matter is now ripe for review.

### III.    Standard of Review and Sequential Evaluation Process

To receive benefits under the Act, a claimant must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 1382c(a)(3)(A). The Act requires that a claimant for disability benefits show that:

> He is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A); 42 U.S.C. § 1382c(a)(3)(B).

The ALJ uses a five-step evaluation process to determine if a person is eligible for disability benefits. *See* 20 C.F.R. § 404.1520. The ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment from 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listing"); (4) whether the claimant's impairment prevents the claimant from doing past relevant work; and (5) whether the

claimant's impairment prevents the claimant from doing any other work. *See* 20 C.F.R. §§ 404.1520. Before step four in this process, the ALJ must also determine Plaintiff's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e).

The disability determination involves shifting burdens of proof. The claimant bears the burden of proof at steps one through four.  If the claimant satisfies this burden, then the Commissioner must show at step five that jobs exist in the national economy that the claimant can perform. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). The ultimate burden of proving disability under the Act lies with the claimant. *See* 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 416.912(a).

When reviewing the denial of disability benefits, the Court must determine whether substantial evidence supports the denial. *Johnson v. Commissioner of Social Sec.*, 529 F.3d 198, 200 (3d Cir. 2008). Substantial evidence is a deferential standard of review. *See Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004). Substantial evidence "does not mean a large or considerable amount of evidence, but rather 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Substantial evidence is "less than a preponderance" and "more than a mere scintilla." *Jesurum v. Sec'y of U.S. Dep't of Health & Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

#### IV.    Relevant Facts in the Record

Plaintiff was born in 1967 and was classified by the Regulations as a younger individual through the date of the ALJ decision. (Tr. 22); 20 C.F.R. § 404.1563. Plaintiff has at least a high school education and past relevant work as a solderer, home attendant, and hand packager. (Tr. 22). As of September 9, 2010, Plaintiff was "work[ing] as an electrician soldering." (Tr. 410).

On October 1, 2010, Plaintiff's alleged onset date, a right knee MRI indicated "[d]egenerative change. Bone bruise versus degenerative osseous signal… Degenerative intrameniscal signal with complex predominantly vertically oriented tear posterior horn medial meniscus." (Tr. 372-73, 575-76). Plaintiff treated with an orthopedist, Dr. Douglas J. Hofmann, M.D., over the next six months. (Tr. 395, 402-04, 565-70). Dr. Hoffmann documented various objective findings, including a rolling gait, crepitus, painful range of motion, tenderness, positive McMurray sign, ankle puffiness, pre-cellulitic changes, antalgic gait, and edema. (Tr. 395, 402-04). He diagnosed her with "advanced" degenerative joint disease in her right knee, with "varus collapse," a "degenerative" meniscus tear, morbid obesity, and history of deep vein thrombosis and pulmonary embolus. *Id.* He opined that "arthroscopy may have little subjective value." (Tr. 405). He observed that she was using a cane and reported only twenty-five percent relief after knee injections. (Tr. 395). Despite these observations, he opined in February

of 2011 that she could perform light duty with up to one hour of continuous standing. (Tr. 395). At this time, Plaintiff reported that she was "currently not working but a friend has encouraged her to do so." (Tr. 395). She explained that "[a] friend hopes to get her working as a cashier at a grocery store where a stool would be available." (Tr. 395). Dr. Hoffmann "encouraged her to engage in a sustained exercise program such as aquatics" and instructed her to follow-up in six weeks. (Tr. 395).

Plaintiff did not return to Dr. Hoffmann, and instead she requested that her primary care physician refer her to a different orthopedist. (Tr. 337). Objective findings related to her right knee documented in subsequent treatment records through 2012 include only pain, tenderness, and a positive McMurray sign. (Tr. 613-16, 618, 747, 749, 850). Examinations with treating providers indicated no edema and "good strength." (Tr. 613, 747, 759).

Plaintiff treated for pain in her left elbow after she fractured it on July 5, 2011. (Tr. 538-64, 576-78, 613). She underwent surgery. (Tr. 576-78. 613). Providers opined that she was not "diligent with her home exercises." (Tr. 377). She underwent physical therapy. (Tr. 699).   Less than four months after the fracture, she reported that she had "no real pain" in her left elbow, with "improvement in symptoms," grip strength, and improved range of motion. (Tr. 613). Her elbow was not tender. (Tr. 613). In November of 2011, physical

therapists noted that she was able to carry a laundry bag with her left arm. (Tr. 659). On November 17, 2011, she reported to physical therapists that she had "no pain" after the previous session. (Tr. 657). On November 21, 2011, she began reporting that her pain was "0/10" before her physical therapy session and "0/10" after her physical therapy session. (Tr. 647, 656). In December of 2011, she had "no [complaints of] L[eft] elbow/wrist pain." (Tr. 651). In January of 2012, she reported a flare of pain after she "bumped" her left elbow at home. (Tr. 640). She reported a decrease in pain and was discharged from physical therapy for her elbow a week later. (Tr. 639, 699). At follow-ups with her orthopedist for her right knee in 2012 and 2013, there are no reports of elbow pain or upper extremity impairments. (Tr. 747, 861).

On October 10, 2011, Plaintiff completed a Function Report. (Tr. 250). She indicated that her medications caused "no" side effects. (Tr. 250, 252). She reported problems lifting, squatting, bending, standing, reaching, walking, kneeling, climbing stairs, and using her hands. (Tr. 248). She did not report problems sitting. (Tr. 248). She reported that she could pay attention for "a couple of [hours]," finishes what she starts, and follows instructions "fairly well." (Tr. 248). She reported that she cared for her ten-year old son, needed help with personal care and daily activities, and prepared meals for herself. (Tr. 245). She indicated that she needed to sit down and take breaks while performing daily

activities. (Tr. 245). She reported that she left her home every day, could drive, could go out by herself, and watched television and did puzzle books every day. (Tr. 245-47).

At a consultative examination on November 22, 2011, Plaintiff exhibited "no edema," with intact strength and sensation and "normal gait…mobility in performing activities, and getting on and off the examining table is normal. Walking on heels and toes is normal but painful because of her right knee meniscal tear. Squatting and arising from squatting position and from a chair are normal." (Tr. 604). Reflexes, straight leg raise, and "[r]ange of motion in all the joints [were] normal." (Tr. 605, 608-11). The consultative examiner opined that an evaluation was needed by an orthopedist. (Tr. 603). The consultative examiner did not review Dr. Hoffmann's orthopedic evaluation. (Tr. 603-05).

On December 1, 2011, state agency psychologist Dr. Edward Jonas, Ph.D., reviewed Plaintiff's file and authored an opinion. (Tr. 101). He opined that Plaintiff had no difficulty with maintaining concentration, persistence, and pace. (Tr. 101). He noted that Plaintiff had normal mental status examination, handles finances, follows instructions, and pays attention for "a couple of hours." (Tr. 101).

She underwent an arthroscopy in December of 2011, followed by injections and a round of physical therapy. (Tr. 618, 698, 747-53, 850). She reported "improved ability to retrieve objects off the floor" to physical therapists in January

of 2012. (Tr. 727). She estimated that she was at fifty percent of her prior level of function and had met "Long Term Goal 1." (Tr. 727). She reported that she had "0" pain after an ultrasound. (Tr. 727). Providers observed that her gait was "antalgic" and "distance limited," but she was using "no devices." (Tr. 720).   In February of 2012, she reported that she was "stronger" with less pain after an ultrasound. (Tr. 724). She was tolerating exercises well. (Tr. 724). She was discharged in February of 2012 after meeting some of her long term goals. (Tr. 698). She was able to retrieve items off the floor, was independent with home exercises and pain management, and was able to transfer from sitting to standing. (Tr. 698). She had an antalgic gait only fifty percent of the time and was at fifty percent of her prior level of function. (Tr. 698). Prior to physical therapy, her pain ranged from a 5 to 10 out of 10. (Tr. 698). On discharge, her pain ranged from a 2 to 5 out of 10 in her right knee and a 0 to 3 out of ten in her elbow. (Tr. 698-99). She was able to grocery shop fifty percent of the time and the other fifty percent used a handicap scooter. (Tr. 698).  Physical therapists concluded that Plaintiff had "good function" in her left upper extremity with "some limitations." (Tr. 699). Her surgeon, Dr. Lawrence Pollack, M.D., noted Plaintiff's "work/activity status," and did not assign any work limitations, releasing her to activities "as tolerated." (Tr. 614, 618, 747-50, 862). None of Plaintiff's physicians submitted a medical opinion supporting her claim for benefits. Doc. 10.

In March of 2012, Plaintiff reported fatigue and snapping, and indicated that citalopram, which she took for depression, was not working. (Tr. 806). She was prescribed Effexor. (Tr. 806). She denied shortness of breath. (Tr. 806). In May of 2012, Plaintiff reported moodiness, and was prescribed an increased dose of amitriptyline. (Tr. 804). Later that month, she reported that amitriptyline was causing fatigue, with "concentration/focus poor to fair." (Tr. 803). She was instructed to decrease her amitriptyline dose and was prescribed fluoxetine (Prozac). (Tr. 803).

On May 11, 2012, Plaintiff followed-up with a sleep specialist. (Tr. 740). Plaintiff reported "using the CPAP every night, 7 days a week for approximately 8-9 hours a night with use of a face mask. She denies any significant problems with CPAP and admits that it does help with her excessive daytime sleepiness." (Tr. 740). She indicated that medication, Provigil, had also helped with daytime sleepiness, but was not covered by her insurance. (Tr. 740). Examination indicated "mild" edema, diminished but clear lungs, and pleasant affect. (Tr. 742). She was instructed to follow-up annually, with CPAP testing every three to five years. (Tr. 740).

Plaintiff did not show up for an appointment with Dr. Pollack on July 11, 2012, and did not return to his care until May of 2013. (Tr. 753, 864).

In August of 2012, she presented to the emergency room for back pain. (Tr. 758). She reported that her back pain began the day before and that she had "no prior" history of back pain. (Tr. 759). She had been bending down to "take the trash out from under the sink." (Tr. 759). Lumbar spine X-rays were normal. (Tr. 767). She reported that she was "ambulatory with cane at times." (Tr. 759). When Plaintiff was discharged, she was "ambulatory." (Tr. 760).

On August 14, 2012, Plaintiff followed-up with her primary care physician. (Tr. 802). She reported that her sciatica was "improving." (Tr. 802). Aside from skin lesions on her upper extremities, musculoskeletal examination was normal. (Tr. 802). She reported no shortness of breath of wheezing, and indicated that she had not had to use Advair. (Tr. 802). She reported that her sleep was "good." (Tr. 802). She reported symptoms of depression, and was prescribed 20 mg of Prozac once per day. (Tr. 802). On August 27, 2012, Plaintiff reported pain with urination. (Tr. 801). She reported having no shortness of breath and that Prozac was "working well." (Tr. 801). She was assessed to have hematuria, obesity, asthma, and depression. (Tr. 801). The record does not mention musculoskeletal complaints. (Tr. 801).

On September 24, 2012, Plaintiff reported fever, chills, and urinary complaints to her primary care physician. (Tr. 800). She had "no back pain" and no shortness of breath. (Tr. 800). She was assessed to have hematuria and a urinary

tract infection. (Tr. 800). The record does not mention musculoskeletal complaints. (Tr. 800). CT scan of the abdomen and pelvis was normal. (Tr. 776).

In October of 2012, Plaintiff reported frequent urination to her primary care provider, along with skin lesions. (Tr. 797-98). She was referred to an urologist. (Tr. 797). She reported "no back pain." (Tr. 799). These records do not mention musculoskeletal complaints. (Tr. 797-99).

In November of 2012, Plaintiff reported sinus congestion and "stress at home" to her primary care provider. (Tr. 796). She requested a prescription for Prozac. (Tr. 796).

On December 4, 2012, Plaintiff's urologist noted Plaintiff reported "urgency with incontinence, feeling of incomplete emptying, and terminal dribbling. She wets with coughing, sneezing, laughing, lifting, getting out of a chair, going up steps." (Tr. 822). The urologist recommended weight loss and prescribed Detrol. (Tr. 822). In January of 2013, Plaintiff reported that "Vesicare has been helpful." (Tr. 821). Her urologist increased Vesicare and prescribed nitrofurantoin. (Tr. 821).

In December of 2012, Plaintiff reported painful urination to her primary care provider. (Tr. 856). She reported she had been placed on Vesicare. (Tr. 856). Her primary care provider prescribed an antibiotic. (Tr. 856). Examination of Plaintiff's upper extremities, lower extremities, spine, and musculoskeletal system was

normal. (Tr. 856).  The record does not mention musculoskeletal complaints. (Tr. 856). In January of 2013, Plaintiff treated for a sore throat and fever with her primary care physician. (Tr. 855). The record does not mention musculoskeletal complaints. (Tr. 855). On February 11, 2013, Plaintiff presented to her primary care provider with cold symptoms and complaints of depression. (Tr. 854). The record does not mention musculoskeletal complaints. (Tr. 854). On February 19, 2013, Plaintiff presented to her primary care provider with cold symptoms and vaginal complaints. (Tr. 853). X-rays of the chest were normal. (Tr. 838-39, 844). The record does not mention musculoskeletal complaints. (Tr. 853). On February 26, 2013, Plaintiff followed-up and reported that she was breathing better. (Tr. 852). Notes indicate, "appetite good, healthy. Busy, packing to move. Little exercise." (Tr. 852). Assessment included hypertension, obesity, hypothyroidism, resolved bronchitis, asthma, and obstructive sleep apnea. (Tr. 852). The record does not mention musculoskeletal complaints. (Tr. 852).

On March 5, 2013, Plaintiff reported that she was breathing better but had been experiencing left knee pain over the previous two to three days. (Tr. 851). Assessment included bilateral knee pain and examination indicated bilateral knee crepitus. (Tr. 851).  X-rays of her bilateral knees showed only "mild osteoarthritic changes of bilateral knees and a small left knee joint effusion." (Tr. 836-37, 843). On March 14, 2013, Plaintiff reported she had been doing a lot of packing as she

was moving. (Tr. 850). She reported pain with weight bearing and ambulation. (Tr. 850). Her primary care provider prescribed Percocet and ibuprofen. (Tr. 850). On April 8, 2013, Plaintiff presented to her primary care provider with a sore throat. (Tr. 849). Examination of her upper extremities, lower extremities, spine, and other musculoskeletal areas was normal. (Tr. 849). The record does not mention musculoskeletal complaints. (Tr. 849).

In April of 2013, another provider observed she exhibited a "slightly" antalgic gait. (Tr. 862). Plaintiff reported that she had only had pain in her right knee for the previous "3 days" after she tripped and fell on her knee. (Tr. 861). Plaintiff reported that she was "able to ambulate and perform activities of daily living." (Tr. 861). She did not exhibit effusion, crepitus, or painful and decreased range of motion again until May of 2013. (Tr. 865-66). At this time, she reported that her knee pain was "affecting her daily activities of living." (Tr. 864). She prepared to undertake a total knee arthroplasty. (Tr. 866).

On June 9, 2013, Plaintiff appeared and testified at a hearing before the ALJ. She testified that she lived alone in a home with her twelve-year old disabled son. (Tr. 36). She testified that she had previously lived in a two-story home. (Tr. 37). She testified that her last job was as a home health aide for a visiting nurses organization, and that she left in October of 2010 because she could not lift with her left arm. (Tr. 37). She later acknowledged that she did not injure her left arm

until July of 2011. (Tr. 39). She testified that she had pain, numbness, and decreased range of motion in her left arm that had continued since July of 2011. (Tr. 39-40). She testified that she collected unemployment through October of 2012 and was able to work through October of 2012. (Tr. 42). She testified that she supported herself with cash assistance, food stamps, and her son's disability payments. (Tr. 47).  She testified that she was unable to sit for very long because of low back pain, "bladder issues," and right knee pain. (Tr. 39, 51, 59). She testified that pain medications, specifically amitriptyline, caused her to be drowsy and impaired her concentration. (Tr. 44). She testified that she is unable to perform daily activities without assistance from her son or friends. (Tr. 51-56). She testified that she no longer reads, does puzzle books, or concentrates well while watching television. (Tr. 58). She testified that she could not get up out of a chair by herself, and that the nurses at her doctors' offices would help her get up and down. (Tr. 62). She testified that she could only walk for twenty feet before getting out of breath, because she does not breathe "very well." (Tr. 66, 74). She testified that the heaviest thing she had lifted since October of 2010 was a five-pound bag of sugar. (Tr. 66). She testified that she could not reach, push, pull, or hold things with her left arm, and that she would drop things. (Tr. 67-68). She testified that she could not grab things off the floor. (Tr. 76).

She testified that she needed her cane everyday for balance, and that if doctors noted that she ambulating independently, it was because she had someone helping her walk. (Tr. 70). She testified that she needed to prop her leg up twice a day for twenty minutes and napped once a day for twenty minutes. (Tr. 73, 75). She testified that she was very depressed and had difficulty concentrating. (Tr. 77). She testified that her symptoms did not change after her surgery or after her injections. (Tr. 79-80). She testified that she could sit for up to two hours at a time. (Tr. 65).She testified that she had just recently began to see a psychiatrist. (Tr. 76).

A VE also appeared and testified. (Tr. 81-93). Plaintiff's counsel did not object to the VE's qualifications and stipulated that he was a "vocational expert." (Tr. 81). The VE testified that Plaintiff could perform jobs in the national economy with the RFC assessed by the ALJ, and with additional restrictions of using an assistive device to balance and having only occasional use of the left arm. (Tr. 88-89). The ALJ asked the VE whether there were conflicts with the DOT, and the VE explained that the DOT did not address a sit/stand option, and that his testimony was based on his "29 years of experience placing disabled adults in alternative employment." (Tr. 87).

On June 13, 2013, the ALJ issued the decision. (Tr. 24). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since October 1, 2010. (Tr. 15). At step two, the ALJ found that Plaintiff's s/p

meniscectomies and chondroplasty of the right knee, moderate restrictive lung disease, minimal facet joint changes of the lumbar spine (L5-S1), s/p left elbow ORIF (residual effects), obesity, sleep apnea, degenerative arthritis of the tight knee, and degenerative joint disease and a calcaneal spur of the left knee were medically determinable and severe. (Tr. 15). At step three, the ALJ found that Plaintiff did not meet or equal a Listing. (Tr. 17). The ALJ found that Plaintiff had the RFC to perform:

> [L]ess than the full range of sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a). She must be allowed to alternate between sitting and standing at will. She is limited to occasional overhead reaching with her left, non-dominant arm. She is limited to occasional handling, fingering, and feeling with the left non-dominant arm. She is limited to occasional crouching, kneeling, stooping, and climbing ramps and stairs. She must not climb any ladders, ropes, or scaffolding. She requires an assistive device to walk, stand, and balance. She needs to have jobs that are not outside so as to avoid cold temperature extremes and humidity.

(Tr. 18). A step four, the ALJ found that Plaintiff could not perform past relevant work. (Tr. 22). At step five, in accordance with VE testimony, the ALJ found that Plaintiff could perform other work in the national economy. (Tr. 23). Consequently, the ALJ found that Plaintiff was not disabled and not entitled to benefits. (Tr. 24).[3]

---

[3] Other evidence appears in the record, but was not submitted to the ALJ. (Tr. 4, 867-1068). Evidence that was not submitted to the ALJ may only be considered if remand is appropriate because the evidence is new, material, and omitted for good cause. *See Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001); *Szubak v.*

## V.   Plaintiff Allegations of Error

## A.   Conclusory Allegations

Plaintiff makes several conclusory allegations that fail to establish entitlement to remand. *See Whitehill v. Colvin*, No. 1:13-CV-2802, 2015 WL 1201393, at *9 (M.D. Pa. Mar. 16, 2015) (citing Local Rule 83.40.4(b) (In Social Security Cases, Plaintiff's brief "shall set forth ... the specific errors committed at the administrative level which entitle plaintiff to relief."); *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231–32 (3d Cir.2008) (explaining that Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a 'showing,' rather than a blanket assertion, of entitlement to relief and, as a threshold requirement, the plain statement of pleadings must possess enough heft to show that the pleader is entitled to relief); *Kiewit Eastern Co., Inc. v. L & R Construction Co.*, Inc., 44 F.3d 1194, 1203–04 (3d Cir.1995) (upholding a district court's finding that a party had waived an issue when a party only made vague references to the issue); *Crawford v. Washington*, 541 U.S. 36, 68, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004) (declining to "mine the record" in order to support party's case)).

Plaintiff asserts that the ALJ failed to develop the record because the consultative examiner opined that an orthopedic evaluation would be necessary,

---

*Secretary of Health and Human Servs.*, 745 F.2d 831, 833 (3d Cir. 1984). Plaintiff has not alleged that this evidence was new, material, or omitted for good cause. (Pl. Brief; Pl. Reply). Consequently, the Court did not consider this evidence.

but the ALJ did not obtain a "post-hearing consultative examination." (Pl. Brief at

21). Section 404.1519a(b) provides:

> (b) Situations that may require a consultative examination. We may purchase a consultative examination to try to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to allow us to make a determination or decision on your claim. Some examples of when we might purchase a consultative examination to secure needed medical evidence, such as clinical findings, laboratory tests, a diagnosis, or prognosis, include but are not limited to:
>
> > (1) The additional evidence needed is not contained in the records of your medical sources;
> >
> > (2) The evidence that may have been available from your treating or other medical sources cannot be obtained for reasons beyond your control, such as death or noncooperation of a medical source;
> >
> > (3) Highly technical or specialized medical evidence that we need is not available from your treating or other medical sources; or
> >
> > (4) There is an indication of a change in your condition that is likely to affect your ability to work, but the current severity of your impairment is not established.

*Id.*

Here, Plaintiff merely asserts that the ALJ should have ordered a

consultative examination based on the existing consultative examination notation

that an orthopedic evaluation was necessary, and the "relative lack of orthopedic

opinion evidence in the file." (Pl. Brief at 21); (Tr. 603). She does not assert that

there was an inconsistency in the evidence that was not resolved, or that the

evidence was insufficient to make a determination. (Pl. Brief at 21). The

consultative examiner did not know that there was already an orthopedic evaluation in the file, from Plaintiff's orthopedist, Dr. Hoffman, who opined that Plaintiff could perform light work despite her impairments. (Tr. 395). Because a medical opinion from Plaintiff's treating orthopedist exists in the file, there was no unresolved conflict and the evidence was sufficient to make a determination. *See* 20 C.F.R. § 404.1519a(b). In fact, Dr. Hoffman's opinion was a treating source medical uncontradicted by any other medical opinion and consistent with the non-medical evidence. Just as the ALJ is generally required to credit an uncontradicted treating source medical opinion when the treating source opines that the claimant is disabled, the Court will not fault the ALJ for relying on an uncontradicted treating source medical opinion when the treating source opines that the claimant is not disabled. *See Burns v. Colvin*, No. 1:14-CV-1925, 2016 WL 147269, at *1 (M.D. Pa. Jan. 13, 2016) (citing *Frankenfield v. Bowen,* 861 F.2d 405, 408 (3d Cir.1988); *Doak v. Heckler,* 790 F.2d 26, 29–30 (3d Cir.1986); *Ferguson v. Schweiker,* 765 F.2d 31, 37, 36–37 (3d Cir.1985); *Kent v. Schweiker,* 710 F.2d 110, 115 (3d Cir.1983); *Van Horn v. Schweiker,* 717 F.2d 871, 874 (3d Cir.1983); *Kelly v. R.R. Ret. Bd.,* 625 F.2d 486, 494 (3d Cir.1980); *Rossi v. Califano,* 602 F.2d 55, 58–59, (3d Cir.1979); *Fowler v. Califano,* 596 F.2d 600, 603 (3d Cir.1979); *Gober v. Matthews,* 574 F.2d 772, 777 (3d Cir.1978)); *Seever v. Barnhart*, 188 F. App'x 747, 754 (10th Cir. 2006) (citing *Winfrey v. Chater,* 92 F.3d 1017, 1022 (10th

Cir.1996)) (We will not fault the ALJ for failing to interpret [Plaintiff's] symptoms and test results differently than [a medical expert]"). Thus,  Plaintiff has failed to establish that the ALJ violated 20 C.F.R. §404.1519a(b).  *See Whitehill*, 2015 WL 1201393, at *9; Local Rule 83.40.4(b); *Phillips*, 515 F.3d at 231–32; *Kiewit Eastern Co., Inc.*, 44 F.3d at 1203–04;  *Crawford*, 541 U.S. at 68 (2004); *Rutherford*, 399 F.3d at 553. The Court finds no merit to this allegation of error.

Plaintiff asserts that the ALJ erred at step 2. (Pl. Brief at 20-21). At step two, the ALJ identifies medically determinable impairments and classifies them as severe or non-severe. 20 C.F.R. § 404.1529. Determining whether a claimant has any medically determinable, severe impairment is a threshold test. 20 C.F.R. § 404.1520(c). If a claimant has any severe impairments, the evaluation process continues. 20 C.F.R. § 404.1520(d)-(g). When the evaluation process proceeds past step two, a claimant alleging an error at step two must articulate the impact this had on subsequent steps. *See Shinseki v. Sanders*, 556 U.S. 396, 409, 129 S. Ct. 1696, 1706, 173 L. Ed. 2d 532 (2009) ("the burden of showing that an error is harmful normally falls upon the party attacking the agency's determination") (citing *Nelson v. Apfel*, 131 F.3d 1228, 1236 (7th Cir. 1997) (Social Security claimant must demonstrate prejudice by ALJ error)) (other internal citations omitted). In *Rutherford v. Barnhart*, 399 F.3d 546 (3d Cir. 2005), the Third Circuit held that a "generalized response" that the impairment makes it "more difficult…to

stand, walk and manipulate [the] hands and fingers" was "not enough to require a remand" based on an error at step two. *Id.* at 553.

Plaintiff asserts only that "the ALJ erred by considering numerous ailments to be nonsevere: hypertension, hypothyroidism, plantar calcaneal spur of the left foot, left ankle sprain and right knee sprain. (Tr. 16) This is contrary to SSR 96-3p and limitations stemming from the aforesaid impairments could have further eroded sedentary base." (Pl. Brief at 20). Plaintiff also asserts that the ALJ "failed to consider" Plaintiff's depression. (Pl. Brief at 21). These are generalized responses that, pursuant to *Rutherford*, are insufficient to establish the need for a remand. *Rutherford*, 399 F.3d at 553. Plaintiff has failed to identify work-related limitations arising out of these impairments that would preclude her from performing sedentary work. *See* Local Rule 83.40.4(b); *Whitehill*, 2015 WL 1201393, at *9; *Phillips*, 515 F.3d at 231–32; *Kiewit Eastern Co., Inc.*, 44 F.3d at 1203–04; *Crawford*, 541 U.S. at 68 (2004).

Even assuming Plaintiff's allegations are sufficient, her step two challenge is essentially a challenge to the RFC, arguing that limitations arising out of these symptoms should have been included in the RFC or Listings assessment. Any error in assessing an impairment that would not cause additional limitations in the RFC or Listings assessment is harmless. As discussed below, the ALJ properly evaluated Plaintiff's credibility and the medical opinions, so substantial evidence

supports the ALJ's RFC. Plaintiff has failed to establish that these impairments caused limitations that no reasonable person would have omitted from the RFC. The Court finds no merit to this allegation of error.

### B.   Credibility

Plaintiff asserts that the ALJ erred in assessing her credibility. (Pl. Brief at 22-26). The ALJ found that Plaintiff was not fully credible. (Tr. 20-23). The ALJ noted a lack of objective findings. (Tr. 20). With regard to her right knee she noted that Plaintiff did not persistently exhibit abnormal range of motion and that medical records showed "no instability of the right knee, no difficulty getting on an off an examination table, normal heel and toe walking, no difficulty squatting or arising from a squatting position, and no difficulty arising from a chair, normal reflexes of the right knee, and normal deep tendon reflexes." (Tr. 20). The ALJ also noted that there was a "discrepancy" between Plaintiff's October 2011 Function Report, where she did not indicate problems sitting, and her testimony, when she testified that she had disabling limitations in sitting since October of 2010. (Tr. 21).  With regard to Plaintiff's elbow, the ALJ noted that Plaintiff denied pain in November of 2011. (Tr. 20). With regard to shortness of breath, the ALJ noted that Plaintiff did not persistently report shortness of breath and denied shortness of breath at times. (Tr. 21). The ALJ cited her physician's opinion that Plaintiff was noncompliant with home exercises. (Tr. 20). The ALJ also relied on a

lack of treatment and lack of complaints for her "back pain, left knee pain, or bilateral hand symptoms." (Tr. 20). The ALJ noted that Plaintiff complained of depression and difficulty concentrating, but indicated in her function report that she could concentrate, had "received limited treatment for her mental impairment," and did not persistently exhibit symptoms of depression or impaired concentration. (Tr. 21).

In assessing credibility, the Regulations instruct the ALJ to consider factors enumerated in 20 C.F.R. §404.1529.  The ALJ is instructed to consider "objective medical evidence," which "is evidence obtained from the application of medically acceptable clinical and laboratory diagnostic techniques, such as evidence of reduced joint motion, muscle spasm, sensory deficit or motor disruption." 20 C.F.R. § 404.1529(c)(2). The record here also contained two medical opinions that contradict Plaintiff's claims of disability. "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2). Opinions can come from various sources, including treating physicians, examining physicians, and non-examining physicians. 20 C.F.R. §§ 404.1527(c)(1)-(2). If a treating source is "well-supported by medically acceptable clinical and laboratory

diagnostic techniques and is not inconsistent with the other substantial evidence in your case record" the ALJ must "give it controlling weight." 20 C.F.R. § 404.1527(c)(2).

Here, the only medical opinion addressing the objective medical evidence regarding physical function was a treating source medical opinion that Plaintiff was not disabled. (Tr. 395). Dr. Hoffman observed the objective findings identified by Plaintiff, but concluded that she could stand for up to an hour. (Tr. 395). There were no new objective findings on physical examination documented in the records after Dr. Hoffman's opinion relating to Plaintiff's right knee. (Tr. 613-16, 618, 747, 749, 850).Plaintiff testified that her symptomology remained the same after Dr. Hoffman's opinion. (Tr. 79-80). Plaintiff only complained of pain in her elbow for four months and only complained of back pain once. (Tr. 538-64, 576-78, 613, 639, 647, 651, 656-57, 747, 861). The only medical opinion with regard to Plaintiff's mental function was from Dr. Jonas, who opined that Plaintiff had no restriction in concentration, persistence, and pace. (Tr. 101).

Plaintiff provides no reason why the medical opinions, combined with the lack of objective findings, could not be relied upon by the ALJ. (Pl. Brief); (Pl. Reply). The ALJ afforded Plaintiff more limitations than Dr. Hoffman and Dr. Jonas.  Just as the ALJ is generally required to credit an uncontradicted treating source medical opinion when the treating source opines that the claimant is

disabled, the Court will not fault the ALJ for relying on an uncontradicted treating source medical opinion when the treating source opines that the claimant is not disabled. *See Burns v. Colvin*, No. 1:14-CV-1925, 2016 WL 147269, at *1 (M.D. Pa. Jan. 13, 2016) (citing *Frankenfield v. Bowen,* 861 F.2d 405, 408 (3d Cir.1988); *Doak v. Heckler,* 790 F.2d 26, 29–30 (3d Cir.1986); *Ferguson v. Schweiker,* 765 F.2d 31, 37, 36–37 (3d Cir.1985); *Kent v. Schweiker,* 710 F.2d 110, 115 (3d Cir.1983); *Van Horn v. Schweiker,* 717 F.2d 871, 874 (3d Cir.1983); *Kelly v. R.R. Ret. Bd.,* 625 F.2d 486, 494 (3d Cir.1980); *Rossi v. Califano,* 602 F.2d 55, 58–59, (3d Cir.1979); *Fowler v. Califano,* 596 F.2d 600, 603 (3d Cir.1979); *Gober v. Matthews,* 574 F.2d 772, 777 (3d Cir.1978)); *Seever v. Barnhart*, 188 F. App'x 747, 754 (10th Cir. 2006) (citing *Winfrey v. Chater,* 92 F.3d 1017, 1022 (10th Cir.1996)) (We will not fault the ALJ for failing to interpret [Plaintiff's] symptoms and test results differently than [a medical expert]")

Plaintiff does not address the ALJ's assessment of objective medical evidence. (Pl. Brief at 22-26). She merely cites to her subjective testimony and subjective reports of pain in various medical records. (Pl. Brief at 24). The fact that these subjective complaints were memorialized in medical records does not transform them into objective evidence. *See Morris v. Barnhart*, 78  Fed.Appx. 820, 824-25 (3d Cir. 2003). The Court concludes that, with regard to objective

medical evidence and credibility, this case is most like *Burns v. Barnhart*, 312 F.3d

113 (3d Cir. 2002), where the Third Circuit explains:

> Burns does not point to any relevant medical opinion that supports his allegations that his pain and exertional limitations are more severe than the ALJ found them to be. *Cf. Cotter,* 642 F.2d at 706–07 (remanding to the ALJ to reconsider a denial of disability benefits because the ALJ's opinion did not address contradictory medical evidence). Instead, he notes only his testimony before the ALJ. As for pain, Burns did testify to experiencing various forms of pain, and the ALJ clearly addressed that testimony and did not reject Burns' allegations completely. As already mentioned, the ALJ found that Burns did suffer from chronic back pain. Nevertheless, the ALJ noted that other parts of Burns' testimony, namely those addressing the number and type of activities he engages in on a daily basis, seemed to belie his assertion that the pain is disabling. In fact, as the ALJ noted, Burns specifically stated that he does not experience pain when he plays the drums. Likewise, Burns' testimony regarding his limitations does not seem consistent with other parts of his testimony. While he testified that he can only lift one pound and could not work an eight-hour day, he admittedly engages in activities—most obviously, taking care of his four dogs and playing drums—that require him to be able to lift more than a pound and to exert at least some effort. With this contradictory testimony and the lack of significant medical evidence or a medical opinion fully supporting his subjective assessment of his limitations or complaints of pain, *cf. Mason,* 994 F.2d at 1067–68 ("Where medical evidence does support a claimant's complaints of pain, the complaints should then be given 'great weight' and may not be disregarded unless there exists contrary medical evidence."), we cannot say that substantial evidence did not support the ALJ's ruling or his rejection of parts of Burns' testimony as not fully credible. *Cf. Van Horn v. Schweiker,* 717 F.2d 871, 873–74 (3d Cir.1983) (stating that an ALJ should note in his decision when he did not find a witness credible).

*Burns v. Barnhart*, 312 F.3d 113, 129-30 (3d Cir. 2002).

The ALJ also found that Plaintiff was less than fully credible because she made inconsistent claims. (Tr. 20-21). "One strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record." SSR 96-7P. Plaintiff cites some records that she contends were consistent with her testimony. (Pl. Brief at 22-26). She does not address the records cited by the ALJ that were inconsistent with her testimony. (Pl. Brief at 22-26).

Plaintiff's testimony was internally inconsistent. She testified that she had been unable to work since October of 2010, but also testified that she was able to work through October of 2012. (Tr. 42). Her testimony was also inconsistent with the other evidence in the record. She testified that her limitations had existed since October of 2010, and included pain and numbness in her left elbow, an inability to retrieve items from the floor, an inability to ambulate more than twenty feet, constant pain in her right knee that was a seven out of ten, lower back pain, an inability to concentrate, and an inability to sit for long periods of time. (Tr. 36-76). However, in October of 2011, she reported in her Function Report that her medications caused "no" side effects. (Tr. 250, 252). She did not report problems sitting. (Tr. 248). She reported that she could pay attention for "a couple of [hours]," finishes what she starts, and follows instructions "fairly well." (Tr. 248). Consequently, her testimony is inconsistent with her Function Report.

This discrepancy is not explained by deterioration over time; she testified that her limitations had been present since October of 2010, and that her symptomology was the same after her surgery and injections. (Tr. 79-80). She exhibited less objective findings after October 2011 than she exhibited before October of 2011. (Tr. 538-64, 576-78, 613, 639, 647, 651, 656-57, 747, 861). There is a complete absence of musculoskeletal complaints from August of 2012 through February of 2013. *Id.* She did not report right knee pain again until April of 2013, when she reported it began three days earlier. (Tr. 861). With regard to back pain, Plaintiff reported on August 4, 2012 that her back pain began on August 3, 2012, with no prior history of back pain. (Tr. 759). By September 24, 2012, she was reporting "no back pain." (Tr. 800). Subsequent records do not mention back pain. (Tr. 538-64, 576-78, 613, 639, 647, 651, 656-57, 747, 861). With regard to elbow pain, she did not report elbow pain until July of 2011, when she fractured her elbow, and by November of 2011, she reported that she had "no" elbow pain and that her elbow pain was a "0/10." (Tr. 538-64, 576-78, 613, 639, 647, 656-57). Subsequent records do not mention elbow pain. (Tr. 747, 861).

Her medical records also indicate a higher degree of function than her testimony. She testified that she had been unable to retrieve items from the floor since October of 2010, but in January of 2012, she was discharged from physical therapy for her elbow after meeting her goal of being able to retrieve items from

the floor. (Tr. 639, 727). She testified that she had not carried anything heavier than a five-pound sugar bag, but reported to her physical therapists that she could carry a laundry bag with her left hand. (Tr. 659). She testified that she could not grocery shop without a motorized scooter, but reported to her physical therapists that she only needed the motorized scooter fifty percent of the time. (Tr. 727). She testified that she was not independent in ambulating or rising out of chairs, and that nursing staff had to help her, but medical records indicated that she was independently ambulatory. (Tr. 395, 402-04, 603-05, 759-60, 850, 861). These activities do not independently establish that Plaintiff can perform substantial gainful activity. *See Fargnoli v. Massanari*, 247 F.3d 34, 44 (3d Cir. 2001) (citing *Jesurum v. Sec'y of U.S. Dep't of Health & Human Servs.*, 48 F.3d 114, 119 (3d Cir. 1995)); *see also Wright v. Sullivan,* 900 F.2d 675, 682 (3d Cir.1990); *Smith v. Califano,* 637 F.2d 968, 971 (3d Cir.1981).  However, they do establish that she did not make consistent claims. *See Horodenski v. Comm'r of Soc. Sec.*, 215 F. App'x 183, 189 (3d Cir. 2007) ("[Claimant's] testimony about her daily activities is not merely significant because of its substance; it was also significant because it was internally inconsistent, which aided the ALJ in determining how much weight to afford to [Claimant's] testimony").

Plaintiff cites her testimony. (Pl. Brief at 22-26); (Pl. Reply). She does not address the conflict between her testimony and the Function Report or medical

records. (Pl. Brief at 22-26); (Pl. Reply). This conflict is a permissible reason to discount her credibility. *See* SSR 96-7p. Similarly, Plaintiff asserts that the ALJ did not properly address the side effects of her medication. (Pl. Brief at 24). Plaintiff does not address the ALJ's rationale that Plaintiff's claimed side effects were not documented in the record. (Tr. 21). This is an accurate characterization of the record. In fact, Plaintiff specifically represented that she had "no" medication side effects in her October 2011 Function Report. (Tr. 250, 252).

Plaintiff asserts that the ALJ "mischaracterized" her testimony and activities of daily living. (Pl. Brief at 26); (Pl. Reply).  However, the ALJ accurately characterized her testimony as "significantly" limited activities of daily living. (Tr. 20). Specifically, the ALJ wrote that "[t]he undersigned also acknowledges that although the claimant has alleged significant limitations in her activities of daily living the claimant's treating source records and clinical examination findings on a longitudinal basis do not provide a credible basis for same." (Tr. 20). Consequently, the ALJ did not mischaracterize her testimony. (Tr. 20). The ALJ simply found that was outweighed by other factors. (Tr. 20). The Court finds no merit to this allegation of error.

Plaintiff asserts that the ALJ was not entitled to rely on her observations of Plaintiff's concentration at the hearing. (Pl. Brief at 25); (Pl. Reply).  However, the ALJ may rely on personal observations of the claimant, as long as the ALJ does

not "accept or reject that individual's complaints solely on the basis of such personal observations." SSR 95-5p. As discussed above, the ALJ also relied on the objective medical evidence and Plaintiff's inconsistent claims. The Court finds no merit to this allegation of error.

Plaintiff does not address the ALJ's reliance on Plaintiff's non-compliance with treatment or conservative treatment for her allegedly debilitating back pain, elbow pain, and depression. (Pl. Brief); (Pl. Reply). Both are proper reasons to discount her credibility. *See* SSR 96-7p.

Finally, Plaintiff asserts that the ALJ did not "consider" various credibility factors. However, "there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision." SSR 06-3p; *see also Phillips v. Barnhart*, 91 Fed.Appx. 775, 780 (3d Cir. 2004) ("the ALJ's mere failure to cite specific evidence does not establish that the ALJ failed to consider it") (quoting *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir.1998)); *Francis v. Comm'r Soc. Sec. Admin.*, 414 Fed.Appx. 802, 804-05 (6th Cir. 2011) ("Although the regulations instruct an ALJ to consider these factors, they expressly require only that the ALJ's decision include "good reasons ... for the weight ... give[n] [to the] treating source's opinion"—not an exhaustive factor-by-factor analysis…Procedurally, the regulations require no more.") (internal citations omitted). If explanation allows meaningful judicial review, it suffices. *See Christ*

*the King Manor, Inc. v. Sec'y U.S. Dep't of Health & Human Servs.*, 730 F.3d 291, 305 (3d Cir. 2013) (Court may "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned"); *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (ALJ is not required to "use particular language or adhere to a particular format in conducting his analysis" and instead must only "ensure that there is sufficient development of the record and explanation of findings to permit meaningful review."); *Hur v. Comm'r Soc Sec.*, 94 F. App'x130, 133(3d Cir. 2004) ("There is no requirement that the ALJ discuss in its  opinion every tidbit of evidence included in the record"). Here, the ALJ's explanation allows for meaningful review.

Plaintiff's allegations boil down to an argument that the weight of the evidence supported her credibility. Plaintiff identifies some factors that weigh in favor of her credibility, specifically her testimony to significantly limited daily activities. (Pl. Brief at 22-26); (Pl. Reply).  However, "[n]either the district court nor this court is empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992) (citing *Early v. Heckler*, 743 F.2d 1002, 1007 (3d Cir.1984)); *see also Chandler v. Comm'r of Soc. Sec.*,  667 F.3d 356, 359 (3d Cir.2011) ("Courts are not permitted to re-weigh  the evidence or impose their own factual determinations" (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). The ALJ is entitled to deference

with regard to credibility determinations. *See Szallar v. Comm'r Soc. Sec.*, No. 15-1776, 2015 WL 7445399, at *1 (3d Cir. Nov. 24, 2015) ("the ALJ's assessment of his credibility is entitled to our substantial deference") (citing *Zirnsak v. Colvin*, 777 F.3d 607, 612–13 (3d Cir.2014)). Plaintiff fails to demonstrate that no reasonable person would find she was not fully credible. *See Richardson v. Perales*, 402 U.S. at 401 (1971). Substantial weight supports the ALJ's credibility assessment, and the Court finds no merit to this allegation of error.

## C.    Listing

Plaintiff asserts that she meets  20 C.F.R. Part 404, Subpart P, Appendix, §1.02(A) ("Listing 1.02(A)"). (Pl. Brief at 13-17); (Pl. Reply).  *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990). A claimant must establish every element of a Listing. *See Sullivan v. Zebley*, 493 U.S. 521, 532 (1990). Listing 1.02(A) requires an inability to ambulate. *Id.* The Listings provide that:

> Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities."

*Id.* § 1.00(B)(2)(b).

Plaintiff asserts that her medical records show "positive objective findings…as well as her inability to ambulate effectively." (Pl. Brief at 17).

Plaintiff cites her diagnostic imaging, objective findings, treatment, subjective reports of pain, and use of a quad cane in a single hand. (Pl. Brief at 13-17).

First, even accepting Plaintiff's claims as true, there is no evidence that she required two canes or a walker to ambulate. Doc. 10; (Pl. Brief); (Pl. Reply). Listing requirements are strict, representing "a higher level of severity than the statutory standard." *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990). Plaintiff's allegation that she needs a cane in one hand to ambulate does not meet the definition of inability to ambulate within the meaning of Listing 1.02(A). *Bullock v. Comm'r of Soc. Sec.*, 277 F. App'x 325, 328 (5th Cir.2007) (Claimant was able to walk with the help of a single cane, as opposed to a walker, two crutches or two canes, climb stairs with the use of a handrail and could walk two blocks at one time); *Jones v. Colvin*, No. 1:13-CV-02161-GBC, 2014 WL 4796491, at *10 (M.D. Pa. Sept. 26, 2014) ("Plaintiff does not assert that she ever needs to use a walker, two crutches, or two canes, and needing to use a cane 'periodically' does not constitute an "inability" to ambulate without a cane. Similarly, being unable to live in second floor apartment does not indicate that Plaintiff would be unable to "climb a few steps at a reasonable pace with the use of a single hand rail." *Id.* With regard to Plaintiff's "stiff pattern" and "difficulty with transitional movements," neither rise to the level of inability to ambulate contemplated by the regulations. Moreover, the treatment record indicates that, while Plaintiff had difficulty getting

into and out of a chair during her appointment[s]"); *Lefevre v. Colvin*, No. 3:12-CV-00787-GBC, 2014 WL 4293983, at *8 (M.D. Pa. Aug. 29, 2014); *McCleave v. Colvin*, No. 3:12-CV-01161-GBC, 2014 WL 4060030, at *10 (M.D. Pa. Aug. 15, 2014) ("Plaintiff must show the inability to walk without two canes, not one. Given her testimony that she only uses one cane to ambulate, Plaintiff fails to meet her burden of showing an inability to ambulate") (internal citation omitted); *Godfrey v. Astrue*, No. 10-565, 2011 WL 1831582, at *6 (W.D. Pa. May 12, 2011); *Demcyk v. Astrue*, No. 10-239, 2010 WL 4257599, at *7 (W.D. Pa. Oct. 21, 2010).

Second, Plaintiff's gait was observed to be normal at times.  (Tr. 603-05, 760, 861). *See Morrison v. Comm'r of Soc. Sec.*, 355 F. App'x 599, 601 (3d Cir.2009) (Claimant did not exhibit inability to ambulate effectively where she had a negative straight leg-raising test, normal strength, normal range of motion, normal gait, no atrophy in her lower extremities and no restricted hip rotation).

Third, diagnoses and objective findings, such as an antalgic gait, do not establish that Plaintiff suffers an inability to ambulate within the meaning of Listing 1.02(A). No physician opined that Plaintiff was so limited in ambulating that she met the definition of inability to ambulate within the meaning of Listing 1.02(A). Doc. 10. The only evidence that Plaintiff was so limited in ambulating that she met the definition of inability to ambulate within the meaning of Listing 1.02(A) were her subjective claims. Doc. 10; (Pl. Brief at 13-17); (Pl. Reply). The

Act requires Plaintiff to produce evidence establishing her disability. *See* 42 U.S.C. § 423(d)(5)(A); 42 U.S.C.A. § 1382c(a)(3)(H)(i) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require.").  The ALJ properly found that Plaintiff's subjective claims were not fully credible. *Supra.*  A reasonable mind could find that Plaintiff's subjective claims failed to meet the strict requirements of Listing 1.02(A). Substantial evidence supports the ALJ's Listing assessment.

### D.    Challenges to Step Five Vocational Findings

Plaintiff asserts that the ALJ erred in evaluating step five. (Pl. Brief at 19); (Pl. Reply at 12-13). Plaintiff notes that the "burden shifts" to the ALJ at step five. (Pl. Brief at 19). However, the burden only shifts with regard to vocational evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993); 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 416.912(a). The RFC is assessed before step four. *Id.* Plaintiff bears the burden through step four. *Id.* By the time the evaluation progresses to step five, the ALJ has already formulated Plaintiff's RFC, and is applying the RFC, age, and education to available jobs in the national economy. *Id.* Consequently, the burden with regard to RFC findings always remains with the Plaintiff. *Id.* A step five challenge only addresses the vocational evidence that

supports the ALJ's finding that Plaintiff could perform jobs in the national economy. *Id.*

Plaintiff asserts that the ALJ erred in including a sit/stand "at will" option in the RFC. (Pl. Brief at 18-19). Plaintiff asserts that sitting and standing at will in "internally contradictory" with a finding for sedentary work, that the phrase "at will" is not sufficiently specific about the frequency at which Plaintiff would need to alternate positions, and that the ALJ failed to address Plaintiff's need for a cane. (Pl. Brief at 18-19).

A sit/stand option is not inherently contradictory with sedentary work. Courts have consistently upheld RFC assessments including a sit/stand option. The ALJ must address and resolve any conflicts between a sit/stand option and the DOT. *See* SSR 00-4p. Here, Plaintiff's counsel did not object to the VE's qualifications and stipulated that he was a "vocational expert." (Tr. 81). The ALJ asked the VE whether there were conflicts with the DOT, and the VE explained that the DOT did not address a sit/stand option, and that his testimony was based on his "29 years of experience placing disabled adults in alternative employment." (Tr. 87). As SSR 00-4p explains:

> Evidence from VEs or VSs can include information not listed in the DOT. The DOT contains information about most, but not all, occupations. The DOT's occupational definitions are the result of comprehensive studies of how similar jobs are performed in different workplaces. The term "occupation," as used in the DOT, refers to the collective description of those jobs. Each occupation represents

> numerous jobs. Information about a particular job's requirements or
> about occupations not listed in the DOT may be available in other
> reliable publications, information obtained directly from employers,
> or from a VE's or VS's experience in job placement or career
> counseling.
>
> The DOT lists maximum requirements of occupations as generally
> performed, not the range of requirements of a particular job as it is
> performed in specific settings. A VE, VS, or other reliable source of
> occupational information may be able to provide more specific
> information about jobs or occupations than the DOT.

*Id.* Consequently, the VE testimony provides substantial evidence regarding the

availability of jobs with a sit/stand option.

"At will" is sufficiently specific to communicate the position at which

Plaintiff would be alternating positions. Courts have consistently explained that

"'at will' constitutes a clear direction that it is for the Plaintiff to determine when

and for how long she sits or stands. *Nicholson v. Colvin*, No. 3:14 CV-1819, 2015

WL 1275365, at *10 (M.D. Pa. Mar. 19, 2015); *Torres v. Colvin*, No. 3:14-cv-

00144 (M.D. Pa. Oct. 30, 2015). Another Court in this District has observed that a

requirement to sit or stand at will constitutes "shorthand language in matters about

which the ALJ and VE are well versed." *Minichino v. Colvin*, 955 F.Supp.2d 366,

381 (M.D. Pa. 2013) (Conaboy, J.). The Court explained:

> As noted above, with this claimed error Plaintiff's challenge to the
> ALJ's compliance with SSR 00–4p relates to the sit/stand option
> included in the RFC and presented to the VE in the ALJ's
> hypothetical. (Doc. 9 at 12.) The conflict allegedly arises because the
> sit/stand option is not referenced in the DOT. (*Id.*) Plaintiff asserts the

ALJ recognizes the conflict in his Decision but did not elicit the required testimony at the hearing. (*Id.*)

We do not agree with Plaintiff's assessment of the situation presented here. In his RFC determination, the ALJ found Plaintiff has the capacity to perform sedentary work with limitations, including that she must be able to sit and stand at will. (R. 24.) In his hypothetical to the VE, the ALJ included this limitation by saying that the hypothetical individual could perform work at a sedentary level but was further restricted on several bases, including that she "requires the ability to sit, stand, move about at will." (R. 80.) A full reading of the VE's response indicates she implicitly acknowledged that the relevant DOT sections for the receptionist information clerk and surveillance system monitor positions did not expressly contain sit/stand options when she found that the overall numbers would be eroded (by about fifty percent) with such an option. (R. 82.) In general terms, the VE's observation that these positions allow change of position at will, is appropriately viewed as a vocational expert's application of her expertise, her "knowledge, experience, and observations" in the words of the ALJ. (*See* R. 33.) Her reduction in the number of positions based on the conflict is similarly appropriate.

Viewed in this context, the ALJ does not run afoul of SSR 00–4p regarding the receptionist information clerk and surveillance monitor positions because he was not presented with an "apparent unresolved conflict." Rather, a fair reading of the colloquy here is that the ALJ was presented with a conflict (made apparent by the VE's testimony) and the VE resolved the conflict to the ALJ's satisfaction in the course of her testimony. In this context, the ALJ would be under no obligation to elicit further testimony from the VE on the sit/stand issue for the two positions for which the VE testified a reduction in numbers would be appropriate based on this limitation—the receptionist information clerk and surveillance monitor positions. Importantly, the ALJ acknowledges in his Decision that the VE's testimony is inconsistent with the DOT and further states there is a "reasonable explanation" for the discrepancy, identifying how it is accounted for. (R. 33.)

While a more detailed analysis would be preferable both in the dialogue between the ALJ and VE at the ALJ hearing and in the ALJ's Decision, And we reject Plaintiff's urging to adopt an interpretation of

> SSR 00–4p which would preclude allowing an ALJ to make reasonable assumptions and preclude a VE from using shorthand language in matters about which the ALJ and VE are well versed. The approach we adopt to these difficult proceedings and technical matters is warranted both by commonsense and Third Circuit caselaw which clearly does not require formulaic language, *see, e.g., Rutherford v. Barnhart,* 399 F.3d 546, 557–58 (3d Cir.2005); *Sargent v. Comm'r of Social Security,* 476 Fed.Appx. 977, 980–81 (3d Cir.2012) (not precedential).

*Id.* at 380-81. The Court finds this reasoning persuasive. *Nicholson* was an appeal by the same counsel representing Plaintiff here.

Plaintiff asserts that the ALJ should have noted that an assistive device significantly erodes the sedentary occupational base in the RFC. (Pl. Brief at 19). This argument conflates the RFC with vocational evidence. *See* SSR 00-4p. The ALJ has no expertise in the occupational base. *Id.*  Instructing the ALJ to include the extent to which an RFC limitation would erode the occupational base would substitute the ALJ's fact finding with vocational evidence, and essentially instruct the VE how to testify. *Id.* The Court finds no merit to this allegation of error.

With regard to the use of a cane, the VE testified that Plaintiff could perform jobs in the national economy with the RFC assessed by the ALJ, and with additional restrictions of using an assistive device to balance and having only occasional use of the left arm. (Tr. 88-89). Again, this testimony provides substantial evidence to the ALJ's step five determination. *See* SSR 00-4p. The Court finds no merit to this allegation of error.

## VI.   Conclusion

The Court finds that the ALJ made the required specific findings of fact in determining whether Plaintiff met the criteria for disability, and the findings were supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); *Brown*, 845 F.2d at 1213; *Johnson*, 529 F.3d at 200; *Pierce*, 487 U.S. at 552; *Hartranft*, 181 F.3d at 360; *Plummer*, 186 F.3d at 427; *Jones*, 364 F.3d at 503. Substantial evidence is a deferential standard of review. *See Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004). Substantial evidence "does not mean a large or considerable amount of evidence, but rather 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (quoting *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence requires "more than a mere scintilla" but is "less than a preponderance." J*esurum v. Sec'y of U.S. Dep't of Health & Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Here, a reasonable mind might accept the relevant evidence as adequate. Accordingly, it is HEREBY RECOMMENDED:

I.   This appeal be DENIED, as the ALJ's decision is supported by substantial evidence; and

II.   The Clerk of Court close this case.

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a Magistrate Judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the Magistrate Judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A Judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The Judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The Judge may also receive further evidence, recall witnesses or recommit the matter to the Magistrate Judge with instructions.

Dated: March 9, 2016                    _____s/Gerald B. Cohn_____
                                         GERALD B. COHN
                                         UNITED STATES MAGISTRATE JUDGE